UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

NICHOLAS OWOYEMI,

                      Plaintiff,

        - against -

J.P. MORGAN CHASE & CO., and
CHASE INVESTMENT SERVICES CORP.,

                      Defendants.
------------------------------------------------------X

Index No. 10 CV 6001(ERK) (JO)

DECLARATION OF TRESE CINTRON PURSUANT TO 28 U.S.C. § 1746 IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | )SS: |
| COUNTY OF COOK | ) |

I, Trese Cintron, of full age, do hereby certify as follows:

1. I am currently employed as a Human Resources Business Partner in the Corporate Human Resources Department at JPMorgan Chase Bank, N.A. ("JPMorgan"), which is the sole and exclusive acquirer of certain assets and liabilities of Washington Mutual Bank ("WMB") from the Federal Deposit Insurance Corporation acting as receiver.

2. I make this declaration in support of the motion by the Bank. This declaration is based on my personal knowledge, my review of Bank records, and/or, where stated, upon information and belief.

3. Plaintiff Nicholas Owoyemi is a former employee of JPMorgan. On November 16, 2008, Plaintiff commenced employment with WMB as a Financial Advisor in the Brooklyn, New York branch.

4. On August 26, 2008, Plaintiff filled out and signed an Employment Application which contains an agreement to abide by WMB's terms and conditions of submitting to arbitration through WMB's Dispute Resolution Process arbitration all employment related disputes. A true and correct copy of the Employment Application is attached hereto as Exhibit A.

5. On October 29, 2008, Plaintiff received and signed an Offer Letter for Employment from WMB which referenced WMB's conditions for employment, including WMB's Dispute

Resolution Process. A true and correct copy of the Offer Letter is attached hereto as Exhibit B.

6. On October 29, 2008, Plaintiff signed a Binding Arbitration Agreement ("Arbitration Agreement"). A true and correct copy of the Arbitration Agreement is attached hereto as Exhibit C.

7. The Arbitration Agreement mandates that both WMB and its employees submit disputes that arise between them, including those relating to alleged employment discrimination and contract claims, to binding arbitration. Under the terms of the Arbitration Agreement, either party may initiate arbitration. See Exhibit C.

8. During Plaintiff's employment, WMB was a federally chartered savings association doing business nationwide.

9. In September 2008, Defendant JPMorgan acquired certain assets and assumed certain liabilities of WMB from the Federal Deposit Insurance Corporation acting as receiver.

10. By its terms, the Arbitration Agreement applies not only to WMB and Plaintiff, but also "to any successor in interest to Washington Mutual" and to any claims against "individuals or entities employed by, acting on behalf of, or affiliated with Washington Mutual". Exhibit C.

11. Neither Defendant JPMorgan nor Defendant JPMorgan Securities have taken any action that would result in a waiver of their rights pursuant to Plaintiff's Binding Arbitration Agreement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January ____4____, 2010.


Trese Cintron

EXHIBIT A

## Washington Mutual
An Equal Opportunity Employer

### *Application for Employment*

**# 267340**

| NAME (LAST, FIRST, MIDDLE) | PREFERRED NAME | HAVE YOU EVER BEEN KNOWN BY ANOTHER NAME? IF SO, PLEASE INDICATE. |
|---|---|---|
| OWOYEMI NICHOLAS A. | | NO |

| PRESENT STREET ADDRESS | DAY PHONE 212 402-7861 | ARE YOU AT LEAST 18 YEARS OLD? | TODAY'S DATE |
|---|---|---|---|
| 1095 EAST 73RD STREET | 718 781-0112 | ☑YES ☐ NO | 06/13/2008 |

| CITY | STATE | ZIP | EVENING PHONE |
|---|---|---|---|
| FLOOR 1, BKLYN NY 11234 | NY | 11234 | 718 781-0112 |

| HAVE YOU APPLIED WITH WASHINGTON MUTUAL OR ANY OF ITS AFFILIATES BEFORE? | HAVE YOU EVER WORKED FOR WASHINGTON MUTUAL OR ANY OF ITS AFFILIATES? | DO YOU HAVE LONG-TERM, INDEFINITE, OR PERMANENT WORK AUTHORIZATION FOR EMPLOYMENT IN THE UNITED STATES? |
|---|---|---|
| ☐ NO ☑YES When? (Mo./Yr.) 2004 | ☑NO ☐ YES When? to | ☑YES ☐ NO |

| ARE YOU SUBJECT TO ANY NON-COMPETITION, NON-SOLICITATION, OR OTHER SIMILAR RESTRICTIVE AGREEMENT? ☑NO ☐ YES If "Yes," provide a copy to your recruiter. | POSITION APPLIED FOR FINANCIAL ADVISOR | POSITION NUMBER 400900 | MINIMUM SALARY DESIRED |
|---|---|---|---|

| AVAILABILITY: ☑FULL-TIME ☐ PART-TIME | DATE AVAILABLE 9/17/08 |
|---|---|

HOURS:  MON   TUES   WED   THU   FRI   SAT   SUN

| DO YOU HAVE ANY RELATIVE(S) OR OTHERS WITH WHOM YOU HAVE A PERSONAL RELATIONSHIP EMPLOYED BY WASHINGTON MUTUAL? ☑NO ☐ YES If "Yes" give name: | RELATIONSHIP TO YOU | WORK LOCATION |
|---|---|---|

HAVE YOU BEEN CONVICTED OF ANY FELONY OR ANY MISDEMEANOR (INCLUDING BUT NOT LIMITED TO THOSE INVOLVING DISHONESTY, BREACH OF TRUST, OR MONEY LAUNDERING OR HAVE YOU PLEADED "NO CONTEST" OR AGREED TO ENTER INTO A PRE-TRIAL DIVERSION OR SIMILAR PROGRAM IN CONNECTION WITH SUCH AN OFFENSE? **DO NOT INCLUDE MINOR TRAFFIC VIOLATIONS, MARIJUANA CONVICTIONS THAT ARE MORE THAN TWO YEARS OLD OR CONVICTIONS WHICH HAVE BEEN SEALED OR EXPUNGED.**

NOTE: A CONVICTION WILL NOT NECESSARILY BAR YOU FROM EMPLOYMENT WITH WASHINGTON MUTUAL.

☑NO ☐ YES  IF "Yes" indicate the nature of the offense, date, court and disposition. (Use an additional sheet if necessary.)

### EMPLOYMENT RECORD – Provide the following information for your last four jobs.

| COMPANY NAME - MOST RECENT EMPLOYER WALLSTREET E. FINANCIAL SERVICES | DATES OF EMPLOYMENT From 01/07 to Present | SALARY Starting:  Ending: |
|---|---|---|

| ADDRESS, CITY, STATE, ZIP CODE 75 MAIDEN LANE, 3RD FLOOR NYNY | POSITION TITLE FINANCIAL ADVISOR Starting:  Ending: |
|---|---|

| SUPERVISOR NAME FRANCISCO OTALVARO | PHONE NUMBER (305) 984-3800 | REASON FOR LEAVING SEEKING CAREER ENHANCEMENT |
|---|---|---|

| RESPONSIBILITIES AND ACCOMPLISHMENTS ① INVESTMENT SALES & ADVISORY ② GOAL (PRODUCTION) ACHIEVEMENTS. AND | NO CLIENT WRITTEN or VERBAL COMPLAINTS | MAY WE CONTACT BEFORE MAKING AN OFFER? ☐ YES ☐ NO |
|---|---|---|

| SOCIAL SECURITY NUMBER (ONE DIGIT PER BOX) | 0 5 4 8 2 0 9 4 5 | HR USE ONLY→ |
|---|---|---|

2335 (05/28/08)         Submit the completed form to the appropriate recruiter

## *Application for Employment, continued*

- I certify that all the information on this application and any resume or other attached documents is true and complete. I understand and agree that any false information or omission by me may result in the rejection of my application, or if I am employed, the termination of my employment. I understand that my employment with Washington Mutual is "at-will" and that both Washington Mutual and I reserve the right to terminate my employment at any time without "cause" or prior notice. I acknowledge that no contrary representations or promises are enforceable unless in a written employment agreement approved by the Board of Directors.

- If I accept an offer of employment with Washington Mutual, I agree to abide by its policies and procedures and to resolve all disputes relating to my employment through Washington Mutual's Dispute Resolution Process, which includes binding arbitration. As a condition of accepting any offer of employment, I will sign a *Binding Arbitration Agreement*. Upon request, Washington Mutual will provide me with a copy of the policy and the Agreement before I sign this application or the Agreement.

- I understand I will not be employed, or my employment will be terminated, if I am or have been convicted of certain crimes, including but not limited to those involving dishonesty, breach of trust, or money laundering.

- Recognizing Washington Mutual's high ethical standards and the Company's obligation to its customers and shareholders, I understand I will be required to sign a *Working for WaMu* form as a condition of employment. The *Working for WaMu* form confirms the obligation to protect confidential information and systems security and to abide by the Washington Mutual Code of Conduct and Appropriate Workplace Conduct policies, among other things.

- I understand that my employment is contingent upon proof of my identity and employment eligibility pursuant to the Immigration Reform and Control Act of 1986.

- I authorize Washington Mutual and its agents to inquire about and review my education records pertaining to my attendance, course work and other school activities. I also authorize Washington Mutual and its agents to obtain personnel information from my prior employers and military units. I authorize Washington Mutual to provide a copy of this application to all such entities and hereby release every such entity from any liability or claim that may arise based upon providing such information to Washington Mutual or its agents.

- I understand that this application is valid only for the position applied for at present and that Washington Mutual is not obligated to retain or consider this application for other openings.

Note:  "Washington Mutual" means Washington Mutual, Inc. and all its subsidiaries and affiliates.

| | |
|---|---|
| _____ | _____ |
| APPLICANT SIGNATURE | DATE |

Washington Mutual is an equal opportunity employer and does not discriminate on the basis of race, religion, color, gender, age, national origin, ancestry, marital status, sexual orientation, physical or mental disability, veteran status, or any other characteristic protected by applicable law. If you need an accommodation to complete this application form, please contact your recruiter. If you are hired and need a reasonable accommodation due to a disability, please inform your manager or submit a *Request for Accommodation* form.

EXHIBIT B

**WaMu** Investments, Inc.

October 29, 2008

Nicholas A. Owoyemi
1095 East 73rd Street                    *#267340*
Floor 1
Brooklyn, New York 11234

Dear Nicholas:

Congratulations! On behalf of WaMu Investments, Inc., I am pleased to offer you the position of
Financial Consultant. We expect that you will start on November 17, 2008 in our Brooklyn, NY
office. You will report directly to me. This letter outlines the terms of your new position.

**Compensation**
Your compensation is composed of two basic elements:

1.     You are eligible to receive semi-monthly, monthly, and quarterly incentive compensation
under the WaMu Investments' Financial Consultant/Licensed Financial Associate Incentive Plan.
2.     In accordance with the Incentive Plan, you will receive a Minimum Incentive ("MI") of
$2800 per month, paid $1400 each semi-monthly period.

On your first day you will receive a copy of the Incentive Plan. Your manager will be available
to answer any questions concerning your compensation.

For an initial period starting November 17, 2008, and ending March 31, 2009, your semi-monthly
incentive earned under the Plan will be calculated by applying a 35% Guaranteed Percentage.
After the initial period has expired, any incentives you earn will be calculated according to the
standard terms of the Plan.

For any quarter in which you begin employment after the beginning of the quarterly measurement
period, your quarterly target incentive will be earned at 100% of target. The quarterly target
incentive is calculated by applying 2% to your Total Commission Credits during the quarter.
After the initial partial quarterly measurement period, you will be eligible to earn quarterly
incentives according to the standard terms of the plan.

In addition, for an initial period starting November 17, 2008, and ending April 15, 2009, you will
be entitled to receive a non-recoverable draw ("NRD") of $200 per month. This will be paid in
semi-monthly payments (twice each month) of $100. To the extent that actual semi-monthly and
monthly incentives earned under the Plan in any Measurement Period exceed the sum of NRD
and MI, you will receive the actual incentives earned. If the actual incentives earned under the
Plan are less than the sum of the NRD and MI, you will receive the NRD and MI. Any shortfall of
actual incentives as compared to NRD in the first Measurement Period of the month will be
reconciled against incentives earned in the second Measurement Period of the month to the extent
those exceed the NRD.

Your first Minimum Incentive will be paid in the first pay advice issued after your start date. The
incentive you earn for your first semi-monthly performance period will be paid in the first pay
advice following the end of that performance period.

For example, if you begin on June 16th, your pay advice on June 30th would include an amount
equivalent to ½ of the monthly Minimum Incentive only. Your first performance period under
the plan is June 16th to June 30th and the pay advice for that period will be issued on July 15th.
This pay advice would include ½ of the monthly Minimum Incentive and ½ of monthly NRD if
that sum exceeds the semi-monthly and monthly incentives earned under the standard plan.

Your position is not eligible for paid vacation, paid sick leave or paid holidays (including floating holidays).

**Licensing**

The Financial Consultant position requires that you currently hold and maintain an active Financial Industry Regulatory Authority ("FINRA") Series 7 and 63 (63 not required in some states). The Financial Consultant position also requires that you hold and maintain a Series 65 (or Series 66 in lieu of the 63 and 65) registration as well as an insurance license with Life, Health and Variable Lines of Authority in the state where you work.

If you do not currently hold an active insurance license and/or a Series 65 or 66 registration, you will have 90 days from your start date to pass the exam(s) and secure the license and/or registration. If you are unable to obtain the required license and/or registration within 90 days from your start date, your employment may be subject to termination.

**Benefits**

WaMu offers a variety of health and wellness benefits so you may select the ones that best fit your needs. Health benefits include medical (including prescription drug and vision coverage), dental, flexible spending accounts, and life insurance coverage. If you'd like health benefits coverage, you'll need to enroll within your first 30 days. You'll do this via WaMu Health, your online, one-stop shop for all your health and wellness needs. Your coverage will be effective the first day of the month following your first 10 calendar days of employment with us.

We currently offer a 401(k) plan ("WaMu Savings"). WaMu Savings allows you to save for retirement by contributing part of your eligible compensation (subject to IRS limitations) to the Plan on a pre-tax and/or post-tax [Roth 401(k)] basis. You are eligible to join WaMu Savings as of your date of hire. *The Plan has an automatic enrollment feature; if you do not opt out then you will be automatically enrolled the first pay period following 60 days from hire with 3% of your eligible compensation contributed to the Plan.*

The Company reserves the right to amend or terminate these Plans at any time. If there is any discrepancy between this summary and the Plan document, the latter will govern.

Information about any additional benefits for which you may be eligible will be made available after your start date.

If you have any questions about any of our benefit programs, you may contact WaMu's Employee Service Center at (866) 492-6847.

**Additional Provisions**

When you accept our offer, you will be employed on an at-will basis, meaning that either you or the Company may terminate our relationship at any time for any reason, without cause or advance notice. No representations to the contrary are effective unless in writing and approved by the Board of Directors.

This offer of employment is contingent, in part, on the following conditions:

- The results of your background and reference checks
- Acceptance for bonding
- Confirmation of your employment and education history
- Proof of your legal eligibility to work for the Company in the United States
- Execution of the Binding Arbitration Agreement (**copy for your records enclosed**) and your agreement to resolve eligible job related concerns through the Dispute Resolution Process (DRP). Your manager will present you with your original Binding Arbitration Agreement for signature on your first day of work.

Please appreciate that you should not change your current employment relationship until the first four items above have been confirmed. If you agree to the terms of this offer please indicate so by signing this letter. The signed original should be returned to Maggie Carrick at 1395 Semoran Blvd. 3rd Floor Casselberry, FL 32707 no later than October 31, 2008.

We have enjoyed getting to know you through the interview process and look forward to the opportunity to have you on our team. I hope that you will accept this offer and I look forward to a great future together. If you have any questions please do not hesitate to contact me at (631) 233-4034.

Sincerely,

Bruce G. Heines
First Vice President, Regional Manager
WaMu Investments, Inc.


**Acceptance**
I accept employment with the Company according to the terms set forth in this letter.

_____
Signature

_____
Date

EXHIBIT C

6312725001          washington mutual bank                                          12:54:01 p.m.      11-05-2008                    4 /7

## Washington Mutual                     *Binding Arbitration Agreement*

Washington Mutual believes that, if a dispute related to your employment here arises, it is preferable for both you and the Company that it be resolved without resorting to litigation. As part of its internal Dispute Resolution Program, which is available to all employees, the Company and its employees mutually agree that any disputes that cannot be resolved internally will go to binding arbitration, because it is a quicker and less disruptive process than litigation.

I, Nicholas Owoyemi _____, in consideration of my employment with Washington Mutual, Inc. or any of its affiliates or subsidiaries ("Washington Mutual") agree with Washington Mutual as follows:

1.    Any and all disputes that involve or relate in any way to my employment (or termination of employment) with Washington Mutual shall be submitted to and resolved by final and binding arbitration.

2.    Washington Mutual and I understand that by entering into this Agreement, each of us is waiving any right we may have to file a lawsuit or other civil action or proceeding relating to my employment with Washington Mutual, and waiving any right we may have to resolve employment disputes through trial by jury. We agree that arbitration shall be in lieu of any and all lawsuits or other civil legal proceedings relating to my employment.

3.    This Agreement is intended to cover all civil claims that involve or relate in any way to my employment (or termination of employment) with Washington Mutual, including, but not limited to, claims of employment discrimination or harassment on the basis of race, sex, age, religion, color, national origin, sexual orientation, disability and veteran status (including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Fair Labor Standards Act, the Immigration Reform and Control Act, and any other local, state or federal law concerning employment or employment discrimination), claims for breach of any contract or covenant, tort claims, claims based on violation of public policy or statute, and claims against individuals or entities employed by, acting on behalf of, or affiliated with Washington Mutual. The only exceptions to this are

- Claims for benefits under a plan that is governed by ERISA,
- Claims for unemployment and workers compensation benefits,
- Claims for injunctive relief to enforce rights to trade secrets, or agreements not to compete or solicit customers or employees.

4.    I understand and agree that, despite anything in this Agreement to the contrary, I am not waiving the right to file a complaint or charge with any government agency authorized to address employment-related matters, including the Equal Employment Opportunity Commission, the Department of Labor, the Occupational Safety and Health Commission, the National Labor Relations Board, the Immigration and Naturalization Service, and any other comparable local, state, or federal agency. I also understand and agree that, despite anything in this Agreement to the contrary, either party may request a court to issue such temporary or interim relief (including temporary restraining orders and preliminary injunctions) as may be appropriate, either before or after arbitration is commenced. The temporary or interim relief may remain in effect pending the outcome of arbitration. No such request shall be a waiver of the right to submit any dispute to arbitration.

5.    Arbitration under this Agreement shall be conducted before a single arbitrator and shall take place within the state where I am currently employed by Washington Mutual, or where I was so employed at the time of termination.

6.    In order to initiate arbitration, Washington Mutual or I must notify the other party in writing of the decision to initiate arbitration, either by personal delivery or certified mail. The statute of limitations otherwise applicable under law shall apply to the delivery of the notice of arbitration. The notice should include the following information about the employee: name, home address, work address, work and home phone numbers, and the following information about the claim(s): date, location, nature of the claims or dispute, facts upon which the claims are made, and remedy requested. Any notice of arbitration initiated by Washington Mutual shall be sent to my last known residence address as reflected in my personnel file at Washington Mutual. Notice of arbitration initiated by me shall be sent to Washington Mutual's Legal Department, attention Associate General Counsel - Litigation. The Legal Department's address is currently 1301 Second Avenue, WMC 3501, Seattle, WA 98101.

7.    Washington Mutual and I will attempt to agree upon a mutually acceptable arbitrator. If Washington Mutual and I are unable to agree upon an arbitrator, we will submit the dispute to the American Arbitration Association ("AAA"). If AAA is unable or unwilling to accept the matter, we will submit the matter to a comparable arbitration service. The arbitration shall be conducted in accordance with the laws of the state in which the arbitration is conducted and the rules and requirements of the arbitration service being utilized, to the extent that such rules and requirements do not conflict with the terms of this Agreement.

8.    At the request of either Washington Mutual or myself, the arbitrator will schedule a pre-hearing conference to, among other things, agree on procedural matters, obtain stipulations, and attempt to narrow the issues. The arbitrator shall have authority to entertain a motion to dismiss and/or a motion for summary adjudication by any party.

*Continued on next page*

3365 (12/07)



# Binding Arbitration, continued

9.   Either party shall be entitled to conduct a limited amount of discovery prior to the arbitration hearing.  Either party may make a request for production of documents from the other party.  Either party may take a maximum of two (2) depositions.  Either party may apply to the arbitrator for further discovery or to limit discovery.  The arbitrator has the discretion to enter an appropriate order upon a showing of sufficient cause.  If any documents requested or to be produced contain or refer to matters that are private, proprietary and/or confidential, the arbitrator shall make an appropriate protective order prohibiting or limiting use and disclosure of such documents and providing for return of documents produced after the arbitration is concluded.

10.  During the arbitration process, Washington Mutual and I may each make a written demand on the other for a list of witnesses, including experts, to be called and/or copies of documents to be introduced at the hearing.  The demand must be served at least forty-five (45) days prior to the hearing.  The list and copies of documents must be delivered within fifteen (15) days of service of the demand.

11.  Either party may file a pre-hearing brief with the arbitrator.  Each brief must be served on the arbitrator and the other party at least five (5) working days prior to the hearing and, if not timely served, must be disregarded by the arbitrator.  The brief shall specify the facts the party intends to prove, analyze the applicable law or policy, and specify the remedy sought.  At the close of the hearing, each party shall be given leave to file a post-hearing brief.  The time for filing the post-hearing brief shall be set by the arbitrator.

12.  Each party, at its own expense, has the right to hire an attorney to represent it in the arbitration.  All parties shall have the right to present evidence at the arbitration, through testimony and documents, and to cross-examine witnesses called by another party.  Each party shall pay the fees of any witnesses testifying at its request, and pay the cost of any stenographic record of the arbitration hearing should it request such a record.  The requesting party must notify the other of such arrangements at least two (2) working days before the hearing.

13.  Any filing fee will be paid by the party initiating arbitration.  To the extent such a fee exceeds the cost of filing a lawsuit in a court of that jurisdiction, Washington Mutual will reimburse the difference.  Any postponement or cancellation fee imposed by the arbitration service will be paid by the party requesting the postponement or cancellation.  During the time the arbitration proceedings are ongoing, Washington Mutual will advance any required administrative or arbitrator's fees.  Each party will pay its own witness fees.

14.  The arbitrator shall issue a written and signed statement of the basis of his or her decision, including findings of fact and conclusions of law.  In making the decision and award, if any, the arbitrator shall apply applicable substantive law.  The arbitrator may only award any remedy that would have been available in court.  The decision and award, if any, shall be consistent with the terms of this Agreement and shall include an allocation of the costs of the arbitration proceeding between the parties.

15.  Each party agrees to promptly pay any arbitration award against it at the conclusion of the arbitration.  Washington Mutual and I agree that the decision of the arbitrator shall be final and binding on all parties and shall be the exclusive remedy of the parties.

16.  This Agreement may be enforced by a court of competent jurisdiction through the filing of a petition to compel arbitration, or otherwise.  The decision and award of the arbitrator may also be judicially enforced pursuant to applicable law.

17.  Because of the interstate nature of Washington Mutual's business, this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §1 et seq. (the "FAA").  The provisions of the FAA (and to the extent not preempted by the FAA, the provisions of the law of the state of my principal place of employment with Washington Mutual that generally apply to commercial arbitration agreements, such as provisions granting stays of court actions pending arbitration) are incorporated into this Agreement to the extent not inconsistent with the other terms of this agreement.

18.  I understand and agree that nothing in this agreement shall limit or modify the at-will nature of my employment relationship with Washington Mutual or require any particular action or procedures prior to termination of employment.

19.  We agree that if any provision of this Agreement is found to be unenforceable to any extent or in violation of any statute, rule, regulation or common law, it will not affect the enforceability of the remaining provisions and the court shall enforce the affected provision and all remaining provisions to the fullest extent permitted by law.

20.  This Agreement cannot be modified except by an amendment in writing, signed by both parties.

21.  By presenting this Agreement to me, Washington Mutual agrees to be bound by its terms.  By signing below, I agree to be bound by its terms.  This Agreement shall remain in full force and effect at all times during and after my employment with Washington Mutual, or any successor in interest to Washington Mutual.

| Employee ID: 2 6 7 3 4 0 | Last four of SSN: 0 9 4 5 | |
| Printed name Nicholas Owoyemi | Signature | Date 10/29/2008 |
| 3365 (12/07) | *Fax all pages of the completed form to: (866) 240-1342 and give your manager the original to place in the Field Employment File.* | |