UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
NICHOLAS OWOYEMI,

                Plaintiff,                Index No. 10 CV 6001(ERK) (JO)

    - against -                           AFFIDAVIT OF TALEE ZUR (POTTER)

J.P. MORGAN CHASE & CO., and
CHASE INVESTMENT SERVICES CORP.,

                Defendants.
-------------------------------------------------X
STATE OF NEW YORK    )
                                 )SS:
COUNTY OF NEW YORK  )

I, Talee Zur (Potter), of full age, do hereby certify as follows:

1. I am an attorney at law of the state of New York and am a Vice President and Assistant General Counsel of JPMorgan Chase Bank. I am familiar with the facts and proceedings surrounding this matter.

2. Submitted in support of Defendants' Motion to Dismiss and Compel Arbitration or in the Alternative Compel Arbitration and Stay the Current Proceedings, is the Affidavit of Trese Cintron. Ms. Cintron was not available to sign the signature line of said certification in person, so same is being submitted with a facsimile of her signature.

3. I hereby certify to the genuineness of the facsimile signature of the submitted certification.

4. I am prepared to file the original of the signature page from the Certification, if requested by the Court or a party.

5. I hereby certify that the foregoing statements made by me are true. I am aware that any of the foregoing statements made by me are willfully false, I am subject to punishment.

6. On or about November 22, 2010, Plaintiff filed a Complaint with the State Supreme Court of the State of New York in this instant action.

7. A true and correct copy of the Complaint is attached hereto as Exhibit A.

_____
Talee Zur (Potter)

Sworn to before me this
4th day of January, 2011

_____
Notary Public

STUART RADISH
Notary Public, State of New York
Qualified in New York County
Reg. No. 01RA6115435
My Commission Expires Sept. 7, 20 12

**EXHIBIT A**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

Nicholas A. Owoyemi,

        Plaintiff,

-against-

JPMorgan Chase & Co.
Chase Investment Services Corp.

Index No.

**COMPLAINT**

TO THE SUPREME COURT OF THE STATE OF NEW YORK

The complaint of the plaintiff, Nicholas A. Owoyemi, respectfully shows and alleges as follows:

1. The plaintiff herein, Nicholas A. Owoyemi is a resident of the State of New York. Mr. Owoyemi resides at 1095 East 73rd Street, Floor 1, Brooklyn, NY 11234

2. The defendants herein, JPMorgan Chase & Co. and Chase Investments Services Corp. have a place of business at 1 DeKalb Avenue Brooklyn, NY 11201

3. In or about September of 2008, plaintiff interviewed for a job as registered representative with Chase Investments Services Corp. ("Chase"), and (interviewed by Donny Davies)

4. Donny Davies an Investment Manager at Chase (First Interviewer) was impressed with plaintiff and recommended him for a second interview (with Karla Wilkie a Senior Vice President with Chase Investment Services Corp.)

5. Karla Wilkie interviewed plaintiff at a Long-Island office.

6. Donny Davies sent plaintiff for the third interview with a Branch Manager in Queens, New York.

7. Plaintiff interviewed with the Branch Manager.

8. Donny Davies offered plaintiff the job as a Financial Advisor.

9. Donny Davies sent plaintiff to Chase Human Resources on Long Island for employment processing.

10. Plaintiff attended Chase Human Resources Department and was processed for employment.

11. Donny Davies later told plaintiff that Karla Wilkie had withdrawn plaintiff's hiring offer, therefore, he could no longer hire plaintiff and wished him well.

12. In or about October of 2008, plaintiff interviewed with Washington Mutual Investments Services, Inc. ("WaMu"). Plaintiff was hired and began to work there.

13. In or about May 2009, JPMorgan Chase & Co. bought and took over Washington Mutual Bank and its affiliate – Washington Mutual Investments Services, Inc.

14. Plaintiff met with both Karla Wilkie and Donny Davies at the first general meeting of WaMu Representatives who had now become Chase Representatives. (After the merger and conversion of WaMu to Chase were completed).

15. Karla Wilkie, who recognized plaintiff, expressed surprise and disgust when plaintiff approached her for introduction at the general meeting.

16. Donny Davies later came to plaintiff's branch office, apologized to plaintiff – exonerated self (for the previous decision not to hire plaintiff before the merger of the two banks) and said "the decision came from Karla Wilkie."... "Karla did not want to hire you – for a reason I didn't know."

17. Karla Wilkie later visited Plaintiff's branch, met with the branch manager and the staff but declined to meet with plaintiff.

18. Karla Wilkie promoted and posted Garth Wilson to supervise plaintiff.

19. Defendants demoted plaintiff to an associate representative from a substantive financial advisory position (held before the merger) without prior reasons or any justification for their action.

20. Plaintiff protested the demotion, communicated his displeasure to his chain of supervision.

21. Defendants later reinstated plaintiff to his title and status prior to the demotion.

22. Garth Wilson apologized to plaintiff, adding that the adverse action came from above him.

23. In October of 2009, on behalf of defendants, plaintiff was summoned to meet with Garth Wilson and Karla Wilkie where Garth Wilson issued plaintiff with a written warning.

24. Garth Wilson later confirmed to plaintiff that he was acting on instructions from above to issue the warning letter to plaintiff – that his hands were tied.

25. In November of 2009, defendants unlawfully terminated plaintiff's employment.

26. Defendants' terminated plaintiff's employment based on prejudice and discrimination, including retaliation for protesting the unlawful demotion.

27. Defendants retaliated against plaintiff by filing derogatory report with Financial Industry Regulatory Authority (FINRA) with intent to harm plaintiff's reputation.

28. Defendants retaliated against plaintiff by filing a derogatory public record against plaintiff with intent to harm plaintiff's reputation to the public.

29. Defendants retaliated against plaintiff by disclosing adverse remarks on plaintiff's professional licenses with intent to damage plaintiff's career and dissuade employers from hiring plaintiff.

30. Defendants, in retaliation, refused to correct the maligned and adverse information filed against plaintiff even when the FINRA had dismissed their complaints against the plaintiff.

31. As a result of defendants' retaliation and the false adverse report to the FINRA, plaintiff was turned down by two banks for employment.

32. As a result of the Defendants' retaliation, plaintiff may never be able to undertake employment in any bank in the United States or around the world.

33. As a result of Defendant's retaliation and adverse report filed against plaintiff with the FINRA, and inability by plaintiff to get employment in banks, he has suffered untold financial hardship.

34. As a result of defendants' retaliatory actions, plaintiff has suffered irreparable emotional damage.

35. Upon information and belief, after unlawful termination of plaintiff, in retaliation against plaintiff, defendants continually give malicious and disparage statements about plaintiff to customers and members of the public who have come into their branches.

36. As a result of defendants' retaliatory actions, plaintiff has suffered professional disgrace.

37. As a result of defendants' retaliatory actions, plaintiff' reputation has been permanently damaged.

38. By reason of the facts and circumstances stated above, defendants' retaliatory actions have infringed upon plaintiff's civil rights under: 42 U.S.C. Section 1981 (Civil Rights Act of 1866) and other allied and applicable laws governing the violations of civil rights of citizens of the United States of America.

39. By reason of the facts and circumstances stated above, plaintiff has been damaged by defendants' discriminatory and retaliatory actions in the sum of $10,000,000.00 (Ten Million Dollars).

Wherefore, plaintiff demands judgment against defendants in the sum of $10,000,000.00 plus interest, costs and disbursements, together with any other relief the court finds to be just and proper.

Dated: November 22, 2010

Nicholas A. Owoyemi
1095 East 73rd Street, Floor 1
Brooklyn, NY 11234
718 781-0112