UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
Nicholas A. Owoyemi, *pro se*, :
 :
                Plaintiff, :
 : **MEMORANDUM & ORDER**
            -against- : 10-cv-6001 (DLI) (JO)
 :
JPMORGAN CHASE & CO., and :
CHASE INVESTMENT SERVICES CORP., :
 :
                Defendants. :
---------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On June 30, 2013, *pro se* Plaintiff Nicholas A. Owoyemi ("Plaintiff") moved to vacate the May 31, 2013 Arbitration Decision (the "Arbitration Decision") rendered by the Financial Industry Regulatory Authority ("FINRA"). (*See* Pl.'s Mem. in Supp. of Mot. to Vacate Decision and Award by FINRA Arbitration ("Pl.'s Mem."), Dkt. Entry No. 38.) On August 23, 2013, Defendants JPMorgan Chase & Co. and Chase Investment Services Corp. (collectively, "Defendants") cross-moved to confirm the Arbitration Decision. (*See* Defs.' Mem. of Law in Opp'n to Pl.'s Mot. to Vacate the Arbitration Award ("Defs.' Mem."), Dkt. Entry No. 40.) For the following reasons, Plaintiff's motion is denied and the Arbitration Decision is confirmed.

## BACKGROUND

Washington Mutual Bank ("WaMu") hired Plaintiff in November 2008 as a Financial Consultant. (Pl.'s Mem. at 5; Defs.' Mem. at 1.) As a condition of his employment, Plaintiff signed an Arbitration Agreement dated October 29, 2008. (*See* Arbitration Agreement ("Arb. Agmt.") at 33-34, Dkt. Entry No. 41.) Plaintiff and WaMu agreed to resolve "[a]ny and all disputes that involve or relate in any way to [Plaintiff's] employment . . . by final and binding arbitration." (*Id.* at 33.) These disputes included civil claims such as those arising "under Title

VII of the Civil Rights Act of 1964 . . . and any other local, state or federal law concerning employment or employment discrimination." (*Id.*)

In 2008, Defendant JPMorgan Chase & Co. ("JPMorgan") acquired the assets and assumed the liabilities of WaMu, after which Plaintiff became a Registered Representative of JPMorgan's subsidiary, Defendant Chase Investment Services Corp. ("Chase"). (*See* Declaration of Gershom R. Smith in Opp'n to Pl.'s Mot. to Vacate and in Supp. of Confirming the Award ¶ 10 ("Smith Decl."), Dkt. Entry No. 44.) In October 2009, Chase terminated Plaintiff based on alleged misconduct. (Pl.'s Mem. at 5; Defs.' Mem. at 2.)

On November 22, 2010, Plaintiff filed an action in the Supreme Court of the State of New York, Kings County, alleging employment discrimination under 42 U.S.C. § 1981. (*See* Not. of Removal ¶ 1, Dkt. Entry No. 1.) Defendants promptly removed the case to this Court and filed a motion on January 4, 2011, to dismiss the action and compel arbitration. (*See* Defs.' Mot. to Dismiss, Dkt. Entry No. 4.) Soon thereafter, Plaintiff filed a motion to amend his complaint and remand the case to state court. (*See* Pl.'s Mot. to Amend, Dkt. Entry No. 10.) On January 26, 2011, this Court denied Plaintiff's motion to remand and referred the case to the Honorable James Orenstein, United States Magistrate Judge (the "MJ"), for a report and recommendation ("R & R") on the motion to amend and the motions to dismiss and compel arbitration. (*See* 1/26/11 ECF Order.)

On May 5, 2011, the MJ issued a R & R, recommending that the Court grant Plaintiff's motion to amend, deny Defendants' motion to dismiss the action, and grant Defendants' motion to compel arbitration, while staying further proceedings pending the outcome of the arbitration. (*See* R & R, Dkt. Entry No. 19.) On July 29, 2011, this Court issued an order adopting the R &

R in its entirety, denied Defendants' motion to dismiss, and granted both Defendants' motions to compel arbitration and Plaintiff's motion to amend the complaint. (*See* 7/29/11 ECF Order.)

On March 30, 2012, Plaintiff filed his Statement of Claim with FINRA. (*See* Arbitration Decision ("Arb. Dec.") at 4, Dkt. Entry No. 41.) Plaintiff asserted various causes of action, including defamation and civil rights violations. (*Id.*) On or about June 7, 2012, Defendants filed a general denial. (*Id.*) On May 31, 2013, FINRA issued a decision denying Plaintiff's claims and assessing various fees to the parties (Arb. Dec at 5-6), which is the subject of the instant motions.

## DISCUSSION

**A.     Standard of Review**

"Judicial review of arbitration awards is necessarily narrowly limited." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F. 3d 16, 19 (2d Cir. 1997) (citation omitted). A district court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4). "Additionally, a petition to vacate an arbitration award can be based on two judicially created exceptions to confirmation: (1) that the award was made in 'manifest disregard' of the law and (2) that the award violates public policy." *Huntington Hosp. v.*

3

*Huntington Hosp. Nurses' Assoc.*, 302 F. Supp. 2d 34, 39 (E.D.N.Y. 2004) (citing *Greenberg v. Bear, Stearns & Co.*, 220 F. 3d 22, 27 (2d Cir. 2000)).

*Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation omitted). Courts should "interpret [such papers] to raise the strongest arguments that they suggest." *Forsyth v. Fed'n Emp't & Guidance Serv.*, 409 F. 3d 565, 569 (2d Cir. 2005) (citation and internal quotation marks omitted). Though a court need not act as an advocate for *pro se* litigants, in such cases there is a "greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Davis v. Kelly*, 160 F. 3d 917, 922 (2d Cir. 1998) (citation omitted).

**B.     Application**

Plaintiff moves to vacate the Arbitration Decision, contending that: (1) the arbitrators exhibited evident partiality for Defendants; (2) engaged in misconduct and misbehavior that prejudiced Plaintiff's rights; (3) exceeded their powers; and (4) exhibited manifest disregard of the law. (Pl.'s Mem. at 2-3.) Defendants move to confirm the Arbitration Decision, on the grounds that: (1) Plaintiff has raised insufficient evidence to merit vacatur under 9 U.S.C. § 10, and (2) Plaintiff has not shown that the arbitrators exhibited manifest disregard of the law. (*See generally* Defs.' Mem.)

**1.     The Arbitrators Did Not Exhibit Evident Partiality**

Plaintiff claims that the FINRA arbitrators exhibited partiality by allowing certain defenses to be heard, refusing to admit some of Plaintiff's evidence while admitting certain evidence from Defendants, and disproportionately assessing costs. (*See* Pl.'s Mem. at 8-10, 12-14, 17-18.) "Evident partiality" under 9 U.S.C. § 10(a)(2) "means more than a mere appearance

of bias." *Florasynth, Inc. v. Pickholz*, 750 F. 2d 171, 173 (2d Cir. 1984). "'[E]vident partiality' . . . will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F. 2d 79, 84 (2d Cir. 1984) (finding evident partiality when there was a father-son relationship between an arbitrator and one of the parties); *see also Sanford Home for Adults v. Local 6, IFHP*, 665 F. Supp. 312, 319-23 (S.D.N.Y. 1987) (finding no bias when arbitrator had a former attorney-client relationship with one of the parties).

In the instant case, Plaintiff's claims do not merit vacatur as they are "speculation without substance." *Int'l Produce, Inc. v. A/S Rosshavet*, 638 F. 2d 548, 551 (2d Cir. 1981). First, Plaintiff contends that the FINRA arbitrators unfairly allowed Defendants to present defenses not included in their answer to Plaintiff's complaint. (Pl.'s Mem. at 8.) Plaintiff cites FINRA Code of Arbitration Rule 13308 to support his argument. However, the language of the rule allows the arbitrator to exercise his or her discretion to permit such defenses: "If a party . . . fails to include defenses . . . in its answer that were known to it at the time the answer was filed, the panel *may* bar that party from presenting the omitted defenses . . . ." (emphasis added). Thus, the arbitrators had the discretion to allow Defendants' arguments.

Second, Plaintiff claims that the arbitrators exhibited partiality by refusing to admit some of Plaintiff's documents into evidence, while admitting certain evidence from Defendants. (Pl.'s Mem. at 12.) As discussed below, courts do not examine an arbitrator's evidentiary decisions unless the arbitration proceedings were fundamentally unfair. *See M. Slavin & Sons, Ltd. v. Cirillo*, 1990 WL 299933, at *3 (E.D.N.Y. May 18, 1990) (denying petitioner's motion to vacate when petitioner alleged that the arbitrator improperly considered certain evidence, but did not show that arbitrator denied petitioner a full opportunity to present its case). Plaintiff has not

5

shown that he was denied a fundamentally fair hearing. (*See infra* Section 2.) As such, the Court declines to review isolated evidentiary rulings by the arbitrators.

Finally, Plaintiff claims that the arbitrators disproportionately assessed the costs of the arbitration proceedings to him. (Pl.'s Mem. at 16-17.) Under the terms of the Arbitration Agreement, the arbitrators were required to assess the cost of the proceedings. (Arb. Agmt. at 34.) A review of the Arbitration Decision indicates that the costs of the proceedings were divided almost equally among the parties. (*See generally* Arb. Dec.) The Court fails to see how this or any of Plaintiff's other allegations demonstrate the appearance of partiality, much less evident partiality.

### 2. The Arbitrators Did Not Exhibit Misconduct or Misbehavior

Plaintiff contends that the arbitrators exhibited misconduct and misbehavior by failing to hear certain evidence, as well as by curtailing the proceedings and his summation. (*See generally* Pl.'s Mem.) Courts evaluate the "fundamental fairness" of arbitration proceedings to determine whether an arbitrator's alleged misconduct or misbehavior in refusing to postpone a hearing or admit evidence prejudiced a claimant's rights. *See Shamah v. Schweiger*, 21 F. Supp. 2d 208, 214 (E.D.N.Y. 1998). "[E]xcept where fundamental fairness is violated, arbitration determinations will not be opened up to review." *Id*. Although the "rights and procedures common to civil trials" are often limited in arbitration proceedings, such limitations do not make arbitration proceedings fundamentally unfair. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 57-58 (1974) (noting that these limitations make arbitrations "an efficient, inexpensive, and expeditious means for dispute resolution"). Instead, "misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator." *Agrawal v. Agrawal*, 775 F. Supp. 588, 589 (E.D.N.Y. 1991) (citing *United Paperworkers Int'l v. Misco, Inc.,* 484 U.S. 29,

40 (1987)). However, courts are not bound by "specific guidelines or rules" in determining whether an arbitration was fundamentally fair. *Ouziel v. Shearson Lehman Bros. Inc.*, 1988 WL 36933, at *2 (E.D.N.Y. April 13, 1988).

### a. Evidentiary Decisions

Plaintiff contends that the arbitrators prejudiced his rights by refusing to admit three of his exhibits, admitting unverified portions of Defendants' Supervisory Policy Manual (the "SPM"), and taking unsworn testimony from an out-of-state witness. (Pl.'s Mem. at 12-16.) However, Plaintiff's contentions do not rise to the level of bad faith or gross error. *See Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Int'l Union*, 500 F. 2d 921, 923 (2d Cir. 1974) (stating that arbitrators "need not follow all the niceties observed by the federal courts" regarding the admissibility of evidence).

First, Plaintiff claims the arbitrators improperly excluded three of his exhibits. One exhibit is a letter, dated November 10, 2009, from Plaintiff to Garth Wilson and Chase's Compliance Department. (*See* 11/10/09 Letter from Plaintiff ("Pl.'s Letter") at 42-43, Dkt. Entry No. 41.) In the letter, Plaintiff requests that Chase withdraw a warning letter dated October 6, 2009, relating to his alleged misconduct. (*Id.* at 43.) Plaintiff also describes an investigation conducted by Mr. Wilson, which allegedly revealed that Plaintiff had not violated Chase's policies. (*Id.* at 42-43.) The other two exhibits appear to be Mr. Wilson's notes prepared in connection with the investigation. (*See* Wilson's Notes ("Notes") at 40-41, Dkt. Entry No. 41.) The notes refer to conversations with four of Plaintiff's clients, and each contains an annotation, "I am comfortable with the transaction." Plaintiff does not explain the nature of the exhibits or their relevance. Instead, Plaintiff presents conclusory arguments, stating that "[t]hese [e]xhibits were very crucial and material." (Pl.'s Mem. at 12.) However, under FINRA

7

Code of Arbitration Rule 13604, "The panel will decide what evidence to admit. The panel is not required to follow state or federal rules of evidence." As such, the arbitrators had the discretion to admit or exclude evidence as part of the arbitration proceedings. Although the exhibits were excluded, Plaintiff was afforded an opportunity to examine Mr. Wilson during the proceedings. (*See* Smith Decl. ¶ 46-47; FINRA Order No. 2 at 38, Dkt. Entry No. 41.) As such, the arbitrators did not demonstrate misconduct or misbehavior by excluding Plaintiff's exhibits.

Second, Plaintiff claims that he was "ambush[ed]" when the arbitrators allowed Defendants to introduce portions of Defendants' SPM at a May 21, 2013 hearing. (Pl.'s Mem. at 15.) Plaintiff alleges that Defendants held back the SPM "[f]or over seven months before the hearing." (*Id.*) Defendants contend that the SPM was produced during discovery. (Smith Decl. ¶ 48-49.) Defendants were required to complete their production of documents by December 14, 2012, and if Plaintiff wished to compel the production of more documents, Plaintiff had to file a request to the FINRA arbitrators by December 21, 2012. (FINRA Order No. 3 at 30, Dkt. Entry No. 42.) There is no indication in the record that Plaintiff made such a request with respect to the SPM or that Defendants withheld the SPM during discovery. Regardless, the record shows that, two months before the May 21 hearing, at Plaintiff's request, he received the portions of the SPM in question via email dated March 19, 2013. (*See* E-mail from Gershom R. Smith, Counsel for Defendants, to Plaintiff ("Smith Email") at 58, Dkt. Entry No. 41.) As such, Plaintiff had sufficient opportunity to familiarize himself with the SPM before it was admitted into evidence on May 21, 2013.

Finally, Plaintiff claims that the arbitrators improperly allowed Heather Emmert, JPMorgan's employee, to offer unsworn testimony about the SPM. (Pl.'s Mem. at 16.) Ms. Emmert's testimony was proffered only after Plaintiff refused to stipulate to the authenticity of

8

the SPM. (*See* Smith Decl. ¶ 51-52; Smith Email at 58.) Plaintiff did not object to Ms. Emmert's testimony during the hearing, and Plaintiff cross-examined her. (*See* Pl.'s Mem. at 16; Smith Decl. ¶ 52; FINRA Audio Recording ("Aud. Rec.") at File No. 1009.) Furthermore, Ms. Emmert verified the authenticity of the SPM in a signed affidavit. (*See* Affidavit of Heather Emmert at 13, Dkt. Entry No. 42.) By questioning Ms. Emmert, Plaintiff effectively waived any objection he may have had to the unsworn testimony. *See Rai v. Barclays Capital Inc.*, 739 F. Supp. 2d 364, 375 (S.D.N.Y. 2010) (reaching similar conclusion when petitioner rested his case instead of requesting an adjournment until a witness was available to testify), *aff'd*, 456 F. App'x 8 (2d Cir. 2011). As such, the arbitrators' evidentiary decisions did not deny Plaintiff a fundamentally fair hearing.

### b. Proceedings and Summation

Plaintiff also contends that the arbitrators improperly shortened the proceedings and his summation. (Pl.'s Mem. at 13, 17.) Neither contention has merit. As with the testimony of Ms. Emmert, Plaintiff effectively waived his objections to ending the hearing by proceeding with his summation. *See Rai*, 739 F. Supp. 2d at 375. To that end, there is no indication in the record that Plaintiff's summation was cut short. The arbitrators allotted each party forty-five minutes for summations. (Smith Decl. ¶ 65.) An audio recording of the hearing reveals that Plaintiff had about three minutes left when he voluntarily ended his summation. (Aud. Rec. at File No. 1010, min. 31:24 to File No. 1011, min. 31:26.) Hence, the arbitrators did not deny Plaintiff a fundamentally fair hearing.

### 3. The Arbitrators Did Not Exceed Their Powers

Plaintiff argues that the arbitrators exceeded their powers by ruling against certain motions, refusing to admit the exhibits discussed above, allowing Ms. Emmert's testimony, and

9

influencing him to testify at a hearing. (*See* Pl.'s Mem. at 8-15.) Plaintiff's allegations do not warrant vacatur. The Second Circuit has "consistently accorded the narrowest of readings to [9 U.S.C.] section 10(a)(4) permitting vacatur where the arbitrator has exceeded her powers." *Jock v. Sterling Jewelers Inc.*, 646 F. 3d 113, 122 (2d Cir. 2011) (citation omitted). The focus of the Court's inquiry is "'whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.'" *Id.* (quoting *DiRussa v. Dean Witter Reynolds Inc.*, 121 F. 3d 818, 824 (2d Cir. 1997)); *see also ReliaStar Life Ins. Co. v. EMC Nat'l Life Co.*, 564 F. 3d 81, 86 (2d Cir. 2009) ("In other words, 'as long as the arbitrator is even arguably . . . acting within the scope of his authority,' a court's conviction that the arbitrator has 'committed serious error' in resolving the disputed issue 'does not suffice to overturn his decision.'" (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

There is no indication that the arbitrators touched on issues outside the scope of the Arbitration Agreement or exceeded their powers. The parties agreed to mutually satisfactory arbitrators (Arb. Agmt. at 33) who rendered a decision based on FINRA rules and regulations. (Arb. Dec. at 4-8.) The Arbitration Agreement provided that the arbitrators could resolve "[a]ny and all disputes that involve or relate in any way to [Plaintiff's] employment." (Arb. Agmt. at 33.) Similarly, the arbitrators could entertain motions, expand or limit discovery, and conduct pre-hearing conferences. (*Id.* at 33-34.)

Regarding Plaintiff's testimony, Plaintiff claims that he testified "unwillingly." (Pl.'s Mem. at 14.) Yet, Plaintiff admits in his Opposition to Defendants' Cross-Motion that the arbitrators did not "compel" him to testify. (Pl.'s Opp'n to Defs.' Cross-Motion at 3, Dkt. Entry No. 45.) While Plaintiff may have been influenced to testify, influence is not grounds for

10

vacatur. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) ("It is only when [an] arbitrator . . . effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (alterations in original)). There is no evidence that the arbitrators forced Plaintiff to testify. As such, the arbitrators did not exceed their powers.

### 4. The Arbitrators Did Not Exhibit Manifest Disregard of the Law

Finally, Plaintiff contends that the arbitrators exhibited manifest disregard of the law. Courts apply a three-step inquiry to determine whether an award may be vacated on the ground of manifest disregard of the law. *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F. 3d 396, 408 (2d Cir. 2009). Courts look to whether "(1) the law that the arbitrators allegedly ignored was clear and 'explicitly applicable to the matter before [them];' (2) 'the law was in fact improperly applied, leading to an erroneous outcome;' and (3) the arbitrators knew of the law's existence and applicability, but intentionally disregarded it." *Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice GmbH*, 840 F. Supp. 2d 703, 711 (S.D.N.Y. 2011) (alteration in original) (quoting *T. Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F. 3d 329, 339 (2d Cir. 2010)).

Plaintiff claims that the arbitrators disregarded Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), in rendering their decision. (Pl.'s Mem. at 5.) However, Plaintiff cannot satisfy the rigid requirements of the manifest disregard standard. *See Goldman v. Architectural Iron Co.*, 306 F. 3d 1214, 1216 (2d Cir. 2002) ("Manifest disregard can be established only . . . where the arbitrator ignored [a governing legal principal] after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature."). Plaintiff has not shown that the arbitrators were aware of a Title VII claim and

11

intentionally ignored it, because, in fact, there is no indication that Plaintiff raised a Title VII claim during the arbitration proceedings. Even assuming that Plaintiff had raised a Title VII claim, "[a]s a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the [Equal Employment Opportunity Commission]."[1] *Deravin v. Kerik*, 335 F. 3d 195, 200 (2d Cir. 2003). There is nothing in the record to indicate that Plaintiff pursued his administrative remedies.

Plaintiff also claims that the arbitrators exhibited manifest disregard of the law by misapplying various, unspecified state and federal laws, as well as FINRA rules, to certain evidentiary decisions. (*See generally* Pl.'s Mem.) As discussed above in Section 2, the arbitrator's evidentiary decisions are not open to examination, and, even if they were, Plaintiff has not shown that the arbitrators intentionally ignored explicitly applicable laws. *See Goldman*, 306 F. 3d at 1216 (stating that manifest disregard requires more than a "mistake of law"). Hence, the arbitrators did not exhibit manifest disregard of the law.

**C. Confirmation of Awards**

"Upon the denial of a motion for vacatur, the Court must confirm an arbitration award." *AmeriCredit Fin. Servs., Inc. v. Oxford Mgmt. Servs.*, 627 F. Supp. 2d 85, 102 (E.D.N.Y. 2008) (citing 9 U.S.C. § 9 ("[U]pon an application for an order to confirm an arbitration award, the court must do so unless the award is vacated, modified, or corrected under § 10 or § 11.") and N.Y. C.P.L.R. 7511 ("[U]pon the denial of a motion to vacate or modify, [the court] shall confirm the award.")). As such, the Arbitration Decision is confirmed and reduced to judgment.

---

[1] To the extent that Plaintiff's motion constitutes the institution of a new action under Title VII (Pl.'s Mot. at 4), such a Title VII claim is now time barred, as there is no indication that such a claim was filed with the EEOC within 180 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to vacate the Arbitration Decision is denied and Defendant's cross-motion to confirm the Arbitration Decision is granted.

SO ORDERED.

Dated: Brooklyn, New York
      July 31, 2014

                                                    /s/
                                          DORA L. IRIZARRY
                                      United States District Judge